UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ERIK MATTSON,

          Plaintiff,

   v.

NEW PENN FINANCIAL, LLC,

          Defendant.

Case No. 3:18-cv-00990-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge:

    Plaintiff Erik Mattson ("Mattson"), individually and on behalf of all other persons similarly situated, alleges that New Penn Financial ("New Penn") made telephone solicitations concerning its residential mortgage lending business in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). Mattson asserts that calls, made to a cellular telephone number ending in -1930 (the "subject number") in September 2017 and October 2017, violated regulations promulgated by the Federal Communication Commission ("FCC") under the TCPA. Specifically, Mattson claims that New Penn violated the FCC's regulations set forth in 47 C.F.R. § 64.1200(c) because the subject number was on the national Do Not Call Registry ("DNCR"). Compl. ¶¶ 84-88, ECF #1.

1 – FINDINGS AND RECOMMENDATIONS

Before the court is New Penn's Motion for Summary Judgment. ECF #46. For the reasons discussed below, the motion should be granted.[1]

## STANDARDS

Under F.R.C.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing F.R.C.P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id.* A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d

---

[1] Given the exhaustive briefing by the parties, the court finds this matter suitable for decision without oral argument pursuant to L.R. 7-1(d)(1).

1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu,* 198 F.3d at 1134.

**FINDINGS**

**I.   Undisputed Material Facts**

Mattson's claim is based on telephone calls and text messages sent to the subject number by New Penn between September 1, 2017, and October 31, 2017. Compl. ¶¶ 43-45, ECF #1. It is undisputed that Mattson used the subject number to place both personal calls and business calls as a principal/president and co-owner of Westland Investors ("Westland"), a commercial real estate investment company. Dep. of Erik Mattson ("Mattson Dep.") 119:16-122:10, ECF #47-6; Decl. of Erik Mattson ("Mattson Decl.") ¶¶ 7, 13, ECF #56-7; Opp. 16, ECF #55. Mattson regularly used the telephone assigned to the subject number to place business calls and allowed colleagues to use the line for conference calls in the course of Westland's business. Mattson Dep. 102:17-103:7, ECF #47-6; Mattson Dep. 119:16-21, ECF #50-3. He also used the subject number on a zoning development application that Westland submitted to a city government. ECF #50-4. Additionally, Mattson's wife, Jessica Mattson, referred to the subject number as Mattson's "work phone." Dep. of Jessica Mattson ("J. Mattson Dep.") 35:17-19, ECF #50-5.

Throughout the relevant time period, the subject number was included in a shared unlimited talk, text, and data plan—a "Verizon Plan Unlimited"—that covered numbers used by other Westland employees. ECF #50-2, at 3-5; ECF #47-5. Also included in the plan was a "booster" device used exclusively at the Westland corporate office to provide better cellular service for employees, and an iPad Air used by a Westland employee in connection with her

3 – FINDINGS AND RECOMMENDATIONS

work.  *Id.*; Mattson Dep. 105:17-109:1, ECF #50-3.  At the time of the challenged calls, the monthly invoices for the Verizon account, including the subject number and the numbers of other Westland employees, was sent directly to Westland's corporate business address and paid by a Westland employee using funds from a Westland corporate checking account.  ECF #50-2; Mattson Dep. 105:7-13, 115:19-117:3, ECF #50-3; ECF #47-7.[2]  For each of the participating employees, including Mattson, Westland paid for unlimited calls and for the smartphone devices in installments over 24 months.[3]  ECF #50-2.  Westland also paid for insurance protection on each of the devices.  *Id*. at 12.  At his deposition, Mattson assumed that Westland deducted the payments on the Verizon account as a business expense, and there is no evidence to the contrary.  Mattson Dep. 102:5-16, ECF #50-3.

In the later part of 2017, the Mattsons were looking to purchase a new home.[4]  J. Mattson Dep. 25:15-21, ECF #62-3.  On September 1, 2017, a sales lead using the subject number was initiated by MinuteMortgageQuotes,com.  Decl. of Ross Yader ("Yader Decl.") ¶¶ 8-10, ECF #52; ECF #52-3.  MinuteMortgageQuotes.com "contained a web form that invited persons interested in mortgage products to provide contact information, and information about their mortgage needs, if they wished to be contacted by mortgage providers[.]"  *Id.* at ¶ 9.  In addition

---

[2] Mattson alleges that the Verizon account is classified as a "personal account," but the bill terms it a "new Verizon Plan Unlimited," and makes no reference to whether it is personal.  ECF # 50-2, at 3; Mattson Decl. ¶¶ 13-14, ECF #56-7.

[3] Mattson contends that he purchased his own cellphone; however, the Verizon account documents show that Westland was making payments on the Moto Z Force device assigned the subject number used by Mattson at the time of the challenged calls in September and October 2017.  Mattson Decl. ¶ 9, ECF #56-7; ECF #47-4, at 5; Mattson Dep. 107:13-24, ECF #47-6.

[4] The Mattsons purchased this property in December 2017.  J. Mattson Dep. 25:19-21, ECF #62-3.  They previously sold another property in April 2017.  Opp. 12, ECF #57.

to the subject number, the lead included Mattson's wife's name, an email address, and the Mattsons' previous home address. ECF #52-3; Mattson Decl. ¶ 6, ECF #56-7.[5]

At the time the lead was generated, the MinuteMortgageQuotes.com website included the following disclosure:

> By clicking "See results," you electronically agree to the Terms of Service and Privacy Policy, to share your information with MinuteMortgageQuotes, up to 4 lenders with whom you have been matched and/or other business partners and consent (not required as a condition to purchase a good/service) for them to contact you through automated means (e.g. autodialing, text and pre-recorded messaging) via telephone, mobile device (including SMS and MMS) and/or email, even if it is a cellular phone number or other service for which the called person(s) could be charged for such call and even if your telephone number is currently listed on any state, federal or corporate Do Not Call registry.

ECF #52-3, at 3.

MinuteMortgageQuotes.com (also sometimes identified in the factual record as SaveBig Leads) passed the Mattson lead to one of New Penn's third-party lead providers, QuinStreet. Yader Decl. ¶ 8, ECF #52. QuinStreet, in turn, passed the Mattson lead to New Penn. Decl. of Nelson DaLuz ("DaLuz Decl.") ¶¶ 14-15, ECF #51; ECF #51-2. Thereafter, New Penn placed six telephone calls and sent three text messages to the subject number between September 1, 2017, and October 31, 2017. *Id.* at ¶ 16; ECF #51-4; ECF #51-5; ECF #56-15, at 3-4. Mattson answered the call placed on October 31, 2017, and spoke with a representative who identified himself as "Tim from New Penn." ECF #47-3, at 4. Mattson never expressly told New Penn to

---

[5] Mrs. Mattson asserts that she "never entered personal data on www.minutemortgagequotes.com or any other site for mortgages in September 2017." J. Mattson Decl. ¶ 2, ECF #56-9. Because this case turns on whether the subject number is a residential line subject to the protections of the TCPA, any dispute concerning the validity of New Penn's consent to call and text the subject number is immaterial. *See* Anderson, 477 U.S. at 248.

stop calling or texting him.[6]  Mattson Dep. 49:9-14, ECF # 47-2; Pl.'s Am. Resp. Interrog. 3-7, ECF #47-3.

Mattson filed a lawsuit against New Penn on November 16, 2017.  *See Mattson v. Quicken Loans, et al.*, 3:17-cv-01840-YY.  The subject number was added to New Penn's internal do-not-call list on November 17, 2017.  DaLuz Decl. ¶ 16, ECF #48; Dep. of Nelson DaLuz ("DaLuz Dep.") 39:3-40:12, ECF #47-1.

## II.    Grounds for Summary Judgment

Mattson's sole cause of action alleges that the challenged calls were in violation of 47 C.F.R. § 64.1200(c) because the subject number was on the DNCR.  Compl. ¶¶ 84-88, ECF #1.  New Penn moves for summary judgment because (1) the subject number is a business number, not a residential number, to which the regulations do not apply, and (2) the claims are foreclosed by the safe harbor provisions codified in 47 C.F.R. § 64.1200(c)(2)(i).  Mot. Summ. J. 1-2, ECF #46.

### A.    Business Number

The TCPA was enacted to protect the privacy interests of residential telephone subscribers.[7]  47 U.S.C.A. § 227(c)(1) (authorizing the promulgation of rules to address the

---

[6] At his deposition, Mattson testified:

> Q: Did you tell the caller on the October 31, 2017, call that you wanted New Penn to stop calling your cell phone?
> A: I don't recall exactly what I said.  There may be a few exceptions, but for the most part I said I'm not interested.

Mattson Dep. 49:9-14, ECF #47-2, at 4.

[7] While the TCPA does not define "call," the FCC has defined it to "encompass[] both voice calls and text calls to wireless numbers."  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).  There is no authority that a cellphone is presumptively a residential or business line and the parties do not dispute that a cellphone can be either.

"need to protect residential telephone subscribers' privacy rights"); *Moser v. F.C.C.*, 811 F. Supp. 541, 544 (D. Or. 1992) (recognizing that the "asserted purpose of the TCPA" is "enhanced residential privacy"). The FCC's procedures relating to recording and honoring do-not-call requests likewise were designed "to protect residential telephone subscriber privacy." *In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, at 14065 (July 3, 2003); *see also* 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number" on the DNCR). As such, the national do-not-call rules do not prohibit calls to business numbers. *Id*. at 14039-40; *In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 9779, at 9785 (June 17, 2008) ("the National Do Not Call Registry applies to 'residential subscribers' and does not preclude calls to businesses"); *Satterfield*, 569 F.3d at 954 (noting that the TCPA protects "residential phone subscribers"); *Clauss v. Legend Securities, In*c., No. 4:13-cv-00381-JAJ, 2014 WL 10007080, at *2 (S.D. Iowa 2014) ("This regulation unambiguously applies only to residential telephone subscribers.") (citation omitted).

Although there is little guidance on the applicability of the TCPA to phones used both for business and personal purposes, there are several factors that compel the conclusion that Mattson's phone is a business line exempt from the protections of the TCPA. First, as detailed above, the phone and its service are paid for by Mattson's employer, Westland. ECF #50-2; Mattson Dep. 105:7-13, 115:19-117:3, ECF #50-3; ECF #47-7. The employees share the account, and the bill, which is sent directly to Westland, is paid by an employee using funds from the company's checking account. *Id*.; Mattson Dep. 105:7-110:10, 115:6-117:3, ECF #50-3. The expectation of privacy in this billing arrangement is not commensurate with a residential line, as the bill contains details for all of the calls. *See, e.g.*, ECF #50-2, at 19-21, 26-30, 35-37.

7 – FINDINGS AND RECOMMENDATIONS

Second, Mattson's belief that Westland deducts the cost of his phone and phone service as business expenses is irreconcilable with his assertion that the phone is for personal use. Mattson Dep. 102:11-16, ECF #47-6; *see also* 26 U.S.C. § 262 (prohibiting tax deductions for personal expenses). Mattson's argument that, as a partial owner of Westland, he is paying for the phone himself is unavailing. Mattson Decl. ¶ 13, ECF #56-7; Opp. 12, ECF #57. Factually, Mattson is a one-third owner, so at most, only one-third of the company's bank account from which the funds are drawn to pay the Verizon bill could be said to "belong" to him. ECF #47-5; Mattson Dep. 102:2-10, ECF #47-6. Moreover, by taking this position, Mattson is asking this court to sanction his alleged use of company funds for his personal expenses, which the court cannot do. *See* O.R.S. 67.060 ("Property acquired by a partnership is property of the partnership and not of the partners individually.").

Third, the FCC's determination not to exempt "home-based businesses" from the do-not-call rules is inapplicable. In support of his argument that mixed-used phone numbers have been considered residential and subject to the TCPA's do-not-call provisions, Mattson relies on a series of cases that involve businesses based out of plaintiffs' homes. In *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, for example, evidence showed that the plaintiff occasionally used his cellphone to sell sheep from his farm to his friends. No. C13–1289 MJP, 2014 WL 4057166, at *3 (W.D. Wash. Aug. 14, 2014). The court held that this type of "home-based business" did not disqualify plaintiff as a "residential telephone subscriber." *Id.*; *see also Clauss*, 2014 WL

10007080, at *2-3 (declining to grant summary judgment where business use was in connection with a home-based business).[8]

The additional cases on which Mattson relies are inapplicable as they pertain to motions to dismiss under F.R.C.P. 12(b)(6), in which the courts permitted discovery to discern the nature of the alleged home-based business use. *See Blevins v. Premium Merchant Funding One, LLC*, Case No.: 2:18-cv-377, 2018 WL 5303973, at *2-3 (S.D. Ohio Oct. 25, 2018); *Owens v. Starion Energy, Inc.*, Case No. 3:16-cv-01912 (VAB), 2017 WL 2838075, at *3 (D. Conn. June 30, 2017); *Baker v. Certified Payment Processing, L.P.*, No. 16-cv-03002, 2016 WL 3360464, at *2 (C.D. Ill. June 1, 2016). In this case, there is no allegation that Westland is "home-based" and no authority compelling an expansion of the "home-based business" exception to other business uses.

Mattson contends that his registration on the DNCR entitles him to the presumption that the subject number is residential. Opp. 19-20, ECF #55. To the contrary, a 2008 FCC order provides that "[t]o the extent that some business numbers have been inadvertently registered on the national registry, calls made to such numbers will not be considered violations of our rules." *See In re Rules and Regulations Implementing the TCPA of 1991,* 23 FCC Rcd. 9779, at 9785 (June 17, 2008). Courts have rejected any such presumption and held that on summary judgment, plaintiffs have the burden of proof on the issue of whether they are residential telephone subscribers. *Lee v. Loandepot.com, LLC*, Case No. 14-CV-01084-EFM, 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016) (granting summary judgment where plaintiff failed to

---

[8] Mattson's reliance on *Warnick v. Dish Network LLC*, No. 12–cv–01952–WYD–MEH, 2014 WL 12537066, at *10 (D. Colo. Sept. 30, 2014) is unavailing, as that court interpreted the language of 47 U.S.C. § 227(b). This action is brought under 47 U.S.C. § 227(c), and the regulations promulgated under this section specifically apply to residential telephone subscribers only. 47 C.F.R. § 64.1200(c).

establish that his cellular number was used for residential purposes); *United States v. Dish Network, LLC*, 80 F. Supp. 3d 917, 922 (C.D. Ill., 2015) (citing *Celotex,* 477 U.S. at 322); *see also* 18 F.C.C. Rcd. at 14039 (stating "that in the case of an enforcement action, the complainant had the burden to prove that the wireless number was used as a residential number").

In sum, Mattson's unsupported assertion that he used the subject number primarily for personal reasons fails to create a genuine issue of material fact. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (citations omitted); Mattson Decl. ¶ 13, ECF #56-7.  Mattson has failed to rebut evidence that his employer, Westland, purchased the phone, paid for the service on an account shared by multiple employees, and apparently deducted the payments as a business expense.  Mattson's use of the subject number for personal calls does not automatically transform it into a residential line for purposes of the TCPA.  *See Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *5–6 (E.D. Pa. Apr. 16, 2019) (finding that plaintiff's cellphone was business phone despite being used for both business and personal calls).  Where Mattson has "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," summary judgment must be granted.  *Celotex*, 477 U.S. at 323.

      **B.**    **Safe Harbor**

New Penn also contends that it is entitled to summary judgment pursuant to 47 C.F.R. § 64.1200(c)(2)(i).  Under this section, a defendant can avoid liability for calling an individual on the DNCR if it can (1) demonstrate that the violation is the result of error, and (2) establish that it had adequate procedures in place to avoid mistakenly calling individuals on the registry.  47

C.F.R. § 64.1200(c)(2)(i); *Lushe v. Verengo Inc.*, No. CV13–07632 AB (RZ), 2014 WL 5794627, at *8 (C.D. Cal. Oct. 22, 2014). Courts have referred to subsection (c)(2) as one of the TCPA's "safe harbor" provisions. *Southwell,* 2014 WL 4057166, at *1; *Lushe,* 2014 WL 5794627, at *8; *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 925 (C.D. Ill. 2014). "The assertion of non-liability based on compliance with the safe harbor provisions may be properly classified as an affirmative defense." *Simmons v. Charter Commc'n, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016).

Here, the court need not consider New Penn's "safe harbor" defense because, as discussed above, Mattson has failed to establish that the calls were made to a residential line.

## RECOMMENDATION

For the reasons discussed, New Penn's Motion for Summary Judgment (ECF #46) should be GRANTED.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Thursday, November 21, 2019. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

///

///

///

///

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  November 7, 2019.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
