S. Amanda Marshall – OSB No. 953473
**S. Amanda Marshall, LLC**
4545 SW Angel Avenue
Beaverton, Oregon 97005
Phone: (503) 472-7190
*amanda@maclaw.law*

Gregory K. Zeuthen – OSB No. 843961
**Gregory K. Zeuthen, Attorney at Law, P.C.**
210 SW Morrison Street, Suite 400
Portland, Oregon 97204
Phone: (503) 227-7257
Fax: (503) 228-1556
*gkz@zlawoffice.com*

Jarrett L. Ellzey – Texas Bar No. 24040864
(*Pro Hac Vice*)
**Hughes Ellzey, LLP**
2700 Post Oak Boulevard, Suite 1120
Galleria Tower I
Houston, Texas 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*jarrett@hughesellzey.com*
*craft@hugheseellzey.com*

John P. Kristensen – Cal. Bar No. 224132
(*Pro Hac Vice*)
**Kristensen Weisberg, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Phone: (310) 507-7924
Fax: (310) 507-7906
*john@kristensenlaw.com*

**ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASS**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| ERIK MATTSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>NEW PENN FINANCIAL, LLC,<br><br>Defendant. | Case No.: 3:18-cv-00990-YY<br><br>Related to and Severed From:<br>Case No. 3:17-cv-01840-YY<br><br>**CLASS ACTION**<br><br>**PLAINTIFF ERIK MATTSON'S OBJECTIONS TO FINDINGS AND RECOMMENDATIONS** |

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. RELEVANT FACTS ..............................................................................................3

    A. ABOUT DEFENDANT ....................................................................................3

    B. DEFENDANT OBTAINED PLAINTIFF'S NUMBER & IDENTIFIED IT AS BEING ON THE DO-NOT-CALL REGISTRY BEFORE CALLING PLAINTIFF ............................3

    C. PLAINTIFF AND HIS CELL PHONE USAGE ...................................................3

    D. DEFENDANT REPEATEDLY CALLED AND TEXTED PLAINTIFF ....................4

III. LEGAL STANDARD .............................................................................................6

    A. THE STANDARD FOR REVIEWING OBJECTIONS ...........................................6

    B. THE STANDARD FOR SUMMARY JUDGMENT ..............................................6

IV. ARGUMENT ..........................................................................................................7

    A. PLAINTIFF ESTABLISHED THAT HIS CELL PHONE WAS USED FOR PERSONAL PURPOSES AND WAS NOT A "BUSINESS NUMBER" TO RAISE A GENUINE DISPUTE OF MATERIAL FACT ......................................................................7

        1. *Plaintiff Purchased His Cell Phone and Cell Phone Plan Before Westland Investors Existed* .................................................................................9

        2. *There Is No Evidence That Westland Deducts the CostsoOf Employee Phone Plans* .........................................................................................10

        3. *The Calls At Issue Were Not "Business to Business" Calls* ...........10

        4. *Plaintiff Provided Sufficient Evidence to Establish That His Cell Phone Is Used For Personal Purposes* .......................................................12

        5. *Caselaw Supports Plaintiff's Position That His Cell Phone Is Used For Personal Purposes* .......................................................................13

    B. DEFENDANT'S "SAFE HARBOR" DEFENSE .................................................15

V. CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Addisu v. Fred Meyer*,
  198 F.3d 1130 (9th Cir. 2000) ..................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242m 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................ 6

*Boyd v. United States*,
  116 U.S. 616 (1886) ............................................................. 12

*Clauss v. Legend Securities, Inc.*,
  No. 4:13-cv-00381, 2014 WL 10007080 (S.D. Iowa Sept. 8, 2014) ................. 13

*F.T.C. v. Publishing Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ................................................. 14

*Lee v. Loandepot.com, LLC*,
  No. 14-CV-01084-EFM, 2016 WL 4382786 (D. Kan. Aug. 17, 2016) .................. 14

*Riley v. California*,
  573 U.S. 373 (2014) ........................................................... 12

*Scott v. Harris*,
  550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) .......................... 6

*Shelton v. Target Advance LLC*,
  No. CV 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) ..................... 11

*Sherman v. Yahoo! Inc.*,
  150 F. Supp. 3d 1213 (S.D. Cal. 2015) ......................................... 7

*Southwell v. Mortgage Investors Corp. of Ohio, Inc.*,
  No. 2:13-cv-01289, 2014 WL 4057166 (W.D. Wash. 2014) ......................... 13

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626, 631 (9th Cir. 1987) ............................................. 6

**Statutes**

28 U.S.C. § 636(b)(1) .............................................................. 6

47 C.F.R. § 64.1200(c)(2)(i) ...................................................... 15

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................6

Fed. R. Civ. P. 72(b)(3)................................................................................................................6

**Treatises**

12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*
§ 3070.2 (1997) ......................................................................................................................6

**Regulations**

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 70 Fed.
Regs. 19330-01, 19331 (Apr. 15, 2005).................................................................................10

Plaintiff Erik Mattson ("Plaintiff" or "Mattson"), individually and on behalf of all others similarly situated, respectfully makes the following objections to the Findings and Recommendations entered in this matter on November 7, 2019 [Dkt. 63]. For the reasons stated below, the Findings and Recommendations should not be followed, and defendant New Penn Financial, LLC's ("Defendant") Motion for Summary Judgment [Dkt. 46] should be denied in its entirety.

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(b) Plaintiff, individually and on behalf of all others similarly situated, objects to the Findings and Recommendations [Dkt. 63] on the following grounds:

First, the Findings and Recommendations reflect that the appropriate standard for summary judgment was not utilized such that the conclusions reached in the Findings and Recommendations were made by weighing the proffered evidence and making credibility determinations as to witnesses. Under the appropriate standard at the summary judgment stage, all facts and inferences must be viewed in the light most favorable to Plaintiff as the nonmoving party and strictly scrutinize the evidence offered by Defendant. Further, under the incorrect standard reflected in the Findings and Recommendations, it is clear that more weight was given to the Defendant's evidence.

Second, despite Plaintiff providing substantial evidence to raise a genuine dispute of material fact as to Plaintiff's personal use of his personal cell phone so as to be correctly held as a "residential telephone subscriber," the Findings and Recommendations' reliance on the stated authority is misplaced. It is undisputed that Plaintiff was assigned the cell phone number around 2007 where he physically went into a store and purchased his cell phone. The Findings and Recommendations consider the wrong issue. The issue is whether the occasional work calls Plaintiff makes on his personal cell phone and that his business pays for his cell phone plans (as it does for all its employees

or partners as an employment perk and earned benefit) automatically transform Plaintiff's personal cell phone to a business number. Plaintiff argues here that it does not, as he did in opposition to Defendant's summary judgment motion. Plaintiff has produced substantial evidence to raise a genuine dispute of material fact from which a reasonable factfinder could conclude that Plaintiff's cell phone was for personal use and thus Plaintiff is a "residential telephone subscriber" for whom the TCPA is intended to protect. Defendant caused several calls to be placed to Plaintiff's cell phone number to market and solicit its mortgage and refinancing services to Plaintiff personally and had nothing to do with Plaintiff's employer. Defendants' calls to Plaintiff were not "business to business" calls that are exempted from TCPA protection.

Third, the Findings and Recommendations failed to provide any analysis of Defendant's "safe harbor" defense based on the erroneous conclusion that Plaintiff's cell phone number is a "business number," which it is not. Without any analysis in the Findings and Recommendations, Plaintiff reserves all rights to argue in opposition and object to a conclusion that Defendant meets its burden of establishing protection from TCPA liability based on the "safe harbor" defense as further stated in Plaintiff's Opposition to Defendant's summary judgment motion [Dkt. 55].

As a whole, when viewing the evidence and all reasonable inferences in Plaintiff's favor, it is clear that the Findings and Recommendations err in its conclusions based on the failure to apply the correct standard at the summary judgment stage. Plaintiff has raised genuine issues of material facts that must be determined by the reasonable factfinder at trial. For these reasons and the reasons in Plaintiff's Opposition to Defendant's summary judgment motion [Dkt. 55], Plaintiff objects to the Findings and Recommendations issued on November 7, 2019.

## II.    RELEVANT FACTS

### A.    ABOUT DEFENDANT

Defendant is a nationwide mortgage lending company based in Pennsylvania that purchases leads containing contact information from consumers. *See* Dkt. No. 41, ¶¶ 1 and 7, Answer. Defendant annually provides services to hundreds if not thousands of Oregonians. *Id*.at ¶ 14.

### B.    DEFENDANT OBTAINED PLAINTIFF'S NUMBER & IDENTIFIED IT AS BEING ON THE DO-NOT-CALL REGISTRY BEFORE CALLING PLAINTIFF

Defendant obtains customers through various traditional marketing avenues, but a significant percentage of its customers originate through a sophisticated telemarketing scheme as detailed in Plaintiff's unredacted Opposition to Defendant's summary judgment motion. *See* Dkt. 55.

### C.    PLAINTIFF AND HIS CELL PHONE USAGE

Plaintiff is a mortgage broker in the Portland, Oregon area. Dkt. 56-7 at ¶ 7. He is a principal/president and one of three owners in a commercial mortgage brokerage business named Westland Investors ("Westland"). Dkt. 56-7 at ¶ 7; Declaration of Erik Mattson ("Mattson Decl."). Westland is a sophisticated business with a brick and mortar office, office furniture, computers, and desk phones. Dkt. 56-7 at ¶ 7.  It is not a home office or operated remotely. *Id*. Westland also has a main business line, (503) 297-2575, which is answered by an employee named Rosemarie who works in the physical office. Dkt. 56-7 ¶ 7.

Like most Americans, Plaintiff uses a cell phone. This phone is assigned the number (503) XXX-1930 and Plaintiff has used this number since around 2007. Dkt. 56-7 at ¶ 8; Mattson Decl. at ¶ 2. Plaintiff personally bought the phone at a store and paid for it; it was not given to him by Westland. Dkt. 56-7 at ¶ 9; Mattson Decl. at ¶ 2. Plaintiff uses both his office landline and his cell phone to place and receive calls. Dkt. 56-7 at ¶ 10. As is his custom, Plaintiff does not give his cell

number to someone with whom he does not have an established relationship, and he does not recall ever entering his cell number into a website as part of an online inquiry. Dkt. 56-7 at ¶ 11; Mattson Decl. at ¶¶ 3-5, 8. On or about April 4, 2015, Plaintiff registered his cell phone number with the National DNC Registry. Dkt. 56-7 at ¶ 12; Mattson Decl. at ¶ 9.

Westland began paying for Plaintiff's cell phone plan at some point after he purchased the phone. Dkt. 56-7 at ¶ 13; Mattson Decl. at ¶ 7. But Plaintiff is an owner of the company, so, in effect, he was paying for the phone himself. *Id.* It's an earned benefit, just like the tens of millions of persons whose personal cell phone are paid by their employers. Plaintiff used his funds through the company to pay the phone bill. *Id.* He is a signer on Westland's checking account and has authorization to use and access that account. Dkt. 56-7 at ¶ 13. Like most Americans who own a cell phone, Plaintiff has conducted business activities using his cell phone. Dkt. 56-7 at ¶ 13. However, Plaintiff purchased, and used, the phone mostly for personal use. Dkt. 56-7 at ¶ 13; Mattson Decl. ¶¶ 3-5. Plaintiff reviewed the call logs associated with the phone bills he has produced in this case, and a vast majority of the calls placed and received were for personal purposes. Dkt. 56-7 at ¶ 13. The Verizon account linked to Plaintiff's cell phone is classified as a personal account. Dkt. 56-7 at ¶¶ 13 and 14. Plaintiff would be required to request and pay for a business plan in order for the line to be a business line. *Id.*

### D. DEFENDANT REPEATEDLY CALLED AND TEXTED PLAINTIFF

Plaintiff registered his cell phone number with the DNC over two years before he received calls and texts from Defendant. Dkt. 56-7 at ¶ 12. Plaintiff never had a business relationship with Defendant, and he never inquired online or anywhere else about its products. *Id.* Nonetheless, on September 1, 2017 at approximately 6:17 p.m. Plaintiff received an automated call with pre-recorded voices about refinancing a mortgage from the phone number (971) 206-9522.  Plaintiff called the

number back and was greeted by what seemed to be a live representative, but in reality, was a deceptive automated system.  Plaintiff asked the automated system questions to which she gave answers that did not logically follow his questions.

Plaintiff called the number back numerous times over the next thirteen (13) minutes, trying to reach someone who could put an end to the phone calls.  Plaintiff had received a number of calls in the past from different numbers which he had blocked that alternated between two voices but always with the same sales pitch.  On each call the avatar operator would answer some basic questions but would always redirect the conversation to personal questions about his credit or his interest in financing his mortgage.  Plaintiff specifically asked "Are you a live person."  The response was "Yes, I am a live person" and then went immediately into the questions that he had been asked on a prior call.

Plaintiff was still not certain if he had been connected to a live representative or was speaking with an automated system, he began answering questions with nonsensical answers to determine whether he was interacting with an actual person or a recorded system.  When asked what his name was Plaintiff responded, "Twelve." The system continued with its questions and did not appear to recognize that Plaintiff was answering nonsensically.  The system then asked Plaintiff if it could have mortgage brokers call him, to which Plaintiff replied, "No."  The system then repeated the question, to which Plaintiff replied, "Two."  After this response, the avatar caller stated that they would have affiliate brokers reach out to him by whatever means available including by phone, by e-mail, by test, or any other means available after which the call abruptly ended.  This call ended on September 1, 2017 at 6:30 or 6:31 p.m.

Thereafter, Defendant placed six telephone calls and sent three text messages to Plaintiff's cellular number between September 1, 2017 and October 31, 2017. Dkt. 56-15 at 3-4.

## III.    LEGAL STANDARD

### A.    THE STANDARD FOR REVIEWING OBJECTIONS

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). Because of the de novo nature of a district court's review, the district court has discretion to consider new evidence or arguments raised for the first time in an objection to a magistrate judge's findings and recommendations. *See* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3070.2, at 378 (1997) ("The statute and the rule both confirm, further, that the district judge is completely free to supplement the record developed by the magistrate judge with further evidence."); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

### B.    THE STANDARD FOR SUMMARY JUDGMENT

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The Court cannot engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Id.* at 255, 106 S.Ct. 2505; *Sherman v. Yahoo! Inc.,* 150 F. Supp. 3d 1213, 1215–16 (S.D. Cal. 2015). Application of these standards to the present case clearly demonstrates that there are genuine issues of material fact that will preclude summary judgment.

## IV.    ARGUMENT

### A.    PLAINTIFF ESTABLISHED THAT HIS CELL PHONE WAS USED FOR PERSONAL PURPOSES AND WAS NOT A "BUSINESS NUMBER" TO RAISE A GENUINE DISPUTE OF MATERIAL FACT

The Findings and Recommendations contained the erroneous conclusion that Plaintiff's cell phone number was a business number. The Findings and Recommendations acknowledge that there is "little guidance on the applicability of the TCPA to phones used both for business and personal purposes" yet disregards that Plaintiff provided sufficient evidence that Plaintiff's phone number was mostly used for personal purposes. There is no authority that states that a plaintiff alleging a TCPA violation must establish that the number was *exclusively* or ***primarily*** a personal number. Rather, the adequate standard is whether a plaintiff established that the plaintiff's cell phone number was used for residential/personal purposes. Under this appropriate standard, it is clear that Plaintiff established

that his cell phone number was for personal use. The Findings and Recommendations strike new law that will open the floodgates to tens of millions of Americans using their personal cell phones being bombarded by constant robocalls, which is precisely what Congress sought to prevent in enacting the TCPA.

As an initial matter, the Findings and Recommendations erroneously contend that Plaintiff's "use of the subject number for personal calls does not automatically transform it into a residential line for the purposes of the TCPA." It is undisputed that Plaintiff's cell phone number was assigned to him in 2007 when he went into a physical store and paid for the cell phone and plans himself, before Westland existed and before Westland paid for the phone plan. Rather, the appropriate question is whether taking an occasional business call on Plaintiff's personal cell phone and accepting an employment perk whereby Westland pays for its employees' personal phone plans automatically transforms Plaintiff's cell phone number to a "business number" such that Plaintiff is not protected by the TCPA. In consideration of the proper question, Defendant did not meet its burden to conclusively establish that Plaintiff's cell phone number is a "business number," which it is not. The evidence, viewed in the light most favorable to Plaintiff as the nonmoving party, demonstrates the existence of a genuine dispute of material fact for which summary judgment must be denied.

The Findings and Recommendations state the following reasons for its erroneous conclusion that Plaintiff's cell phone number is a "business number": (1) the phone and its service are paid for by Plaintiff's employer without acknowledging that Plaintiff acquired the cell phone number around 2007 when he went to a physical store and paid for the cell phone himself and was assigned the cell phone number; (2) the speculation that the cost of the phone and phone service are deducted as business expenses as there was no evidence that the cost of Plaintiff's cell phone and cell phone plan

are deducted as business expenses; and (3) Plaintiff's cell phone number was not analogous to a "home-based business" exemption despite Plaintiff establishing that his cell phone number is used for personal purposes and the calls by Defendant to Plaintiff's cell phone number were to market and solicit personal mortgage and possible refinancing information for Plaintiff's residence and had nothing to do with Plaintiff's business. Plaintiff will address these erroneous reasons in turn.

### 1. Plaintiff Purchased His Cell Phone and Cell Phone Plan Before Westland Investors Existed

First, it is undisputed that Plaintiff paid for his cell phone and cell phone plan for which he was assigned his cell phone number since 2007 when Plaintiff entered a physical store and made payments, before Westland Investors existed. As an employment perk, Westland pays for the cell phone plans for its employees and partners. There is no requirement that Westland employees/partners conduct business using their cell phones. It is not expected by Westland that its employees or partners conduct business with their cell phones. The employment perk means that Westland pays for the cell phones and cell phone plans, directly. Employers routinely pay for their employees' cell phones and cell phone plans through paying their employees' wages and salaries. Regardless of direct or indirect methods, employers' funds are used to pay for their employees' cell phones and cell phone plans.[1] Specifically, for Plaintiff, Westland took over payment of Plaintiff's already-existing personal cell phone number without expectation that the cell phone number would be used for business purposes. While the Findings and Recommendations conclude that the "expectation of privacy in this billing arrangement is not commensurate with a residential line," there is nothing different than a family plan where details of calls would be available. Further, details of

---

[1]    Another indirect method in which employers pay the costs for their employees' cell phone numbers is through subsidies. Employers often subsidize the cost of cell phones and cell phone plans for their employees.

calls are available to a wireless phone provider as well, including its employees and customer service staff, this fact does not render a personal cell phone number a "business number." Westland employees/partners are not required to have their cell phone plans paid directly by Westland, they could choose not to participate in the employment perk. The undisputed facts are that Plaintiff's cell phone number is, and was used, for personal purposes. It was always intended to be Plaintiff's personal cell phone number since he acquired it personally in 2007.

### 2. There Is No Evidence That Westland Deducts the Costs of Employee Phone Plans

Second, there is no evidence that Westland deducts the costs for its employees or partners' cell phone plans. When questioned during his deposition, Plaintiff stated he had "not reviewed that specific line item on the tax returns to know what was done." He went on to state, "I would imagine, but I can't confirm without looking at it." *See* Dkt. 53-5 at 102:11-14; 102:14-16 from companion case *Mattson v. Quicken Loans*, Case No.: 3:18-cv-00989-YY (related to and severed from: Case No.: 3:17-cv-01840-YY). This "fact" is pure speculation and has not been conclusively established by Defendant and cannot be relied upon by this Court as no admissible evidence has been presented in granting summary judgment as to this reason. The Court cannot rely on pure speculation as a ground for granting summary judgment in light of the disputed facts that raise a genuine issue of material facts to be decided by a reasonable factfinder.

### 3. The Calls At Issue Were Not "Business to Business" Calls

Third, the Findings and Recommendations concluded that the FCC's "home-based businesses" exemption was inapplicable here. This conclusion was erroneous as it is undisputed that Defendant called Plaintiff's cell phone number to market its services for Plaintiff's personal purposes regarding mortgage and/or refinancing information. Defendant did not call Plaintiff multiple times

over any Westland business, nor did any of the calls reference Westland in any manner as they were in regard to Plaintiff's residence. The TCPA "does not preclude calls to businesses." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 70 Fed. Regs. 19330-01, 19331 (Apr. 15, 2005). However, Defendant called, and intended to call, Plaintiff on his personal cell phone to offer him personal, not business-related services. "The FTC's website also has a page titled 'Q & A for Telemarketers & Sellers About DNC ["Do Not Call"] Provisions in TSR ["Telemarketing Sales Rule"],' which states under the heading 'Business-to-Business Calls,' '*Most phone calls to a business made with the intent to solicit sales from that business are exempt from the Do Not Call provisions*.'" *Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) (emphasis added, alterations in original) (citing https://www.ftc.gov/tips-advice/business-center/guidance/qa-telemarketers-sellers-about-dnc-provisions-tsr (last visited Dec. 5, 2019)).

Defendant intended to solicit Plaintiff on personal matters when it caused several phone calls to be made to Plaintiff's personal cell phone number. Thus, the calls to Plaintiff's cell phone number were not "business-to-business" calls exempted from TCPA protection. The reliance on *Shelton* in the Findings and Recommendations is misplaced, as the *Shelton* plaintiff registered his phone number as the phone number for his business to the public at large via a website. The calls to the *Shelton* plaintiff at issue for TCPA violations "*were directed and made to the business use of the cellphone, and not to the personal use*. . .. "each call [the plaintiff] allegedly received included 'a scripted sales pitch about business loans and/or merchant cash advance services.'" *Shelton*, 2019 WL 1641353 at *5.

Here, it is undisputed that Defendant called Plaintiff on his personal cell phone to discuss the mortgage and refinancing of Plaintiff's *personal* residence, not to inquire about Westland or its *business* services. Further, Plaintiff disputes that he has provided his cell phone number as

Westland's business number, and in the sole document offered by Defendant as to this issue, Plaintiff's cell phone number is listed as "Mobile" not as the official business "Phone" which is routed to Westland's physical office and is answered by a receptionist.

### 4.    *Plaintiff Provided Sufficient Evidence to Establish That His Cell Phone Is Used for Personal Purposes*

Since around 2007, Plaintiff's number has been his personal cell phone number and is mostly used for personal purposes. It was not a cell phone number assigned to him by Westland or required by Westland. That Plaintiff may on occasion conduct business using his cell phone does not conclusively render Plaintiff's cell phone number a "business number." Plaintiff does not hold out his cell phone number as Westland's business number or his own business number It is known to Plaintiff's family and friends as his cell phone number since before Westland was established. Plaintiff has not advertised to the public at large that his cell phone number is a business number. As argued by Plaintiff in his Opposition, if Defendant's interpretation of what renders a cell phone number a "business number" is upheld as it was here in the Findings and Recommendations, every person who has registered their cell phone and availed themselves of TCPA protections would be left unprotected if they occasionally call into work sick, text a manager or supervisor about a doctor's appointment, or inform their manager or supervisor about an emergency.

Personal cell phone numbers are commonly employed for work and/or business purposes. People text or call their managers or supervisors to call in sick, check work schedules, or communicate regarding their work when not in their employer's physical locations. In today's ever-evolving society, reliance on technological devices and remote access is increasing. Gone are the days where someone could be reached only at their residence via a landline or at their place of business via a landline. The development of mobile devices has changed the way people

communicate. "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Riley v. California*, 573 U.S. 373, 403 (2014) (quoting *Boyd v. United States*, 116 U.S. 616, 630(1886)).

### 5. *Caselaw Supports Plaintiff's Position That His Cell Phone Is Used for Personal Purposes*

The cases cited by Plaintiff further provide authority from which it can be established that Plaintiff's cell phone number was a personal cell phone number, or at least, that a genuine dispute of material fact exists for which summary judgment must be denied. In *Clauss v. Legend Securities, Inc.*, No. 4:13-cv-00381, 2014 WL 10007080 (S.D. Iowa Sept. 8, 2014), the plaintiff was an attorney who had registered his cell phone number as a residential telephone subscriber availing himself of TCPA protections while also publicly listing his cell phone number in court documents and filings as his phone number in his capacity as an attorney. *Id.* at *2. Further, the plaintiff registered a limited liability company and in several publicly available documents, the plaintiff's cell phone number was listed as the company's business number. *Id.* Viewing this evidence under the appropriate summary judgment standard, the District Court concluded that a genuine dispute of material fact existed. "Here, there is evidence supporting both the contention that Plaintiff's phone number was a residential phone number and that the phone number was a business phone number. In fact, based on the evidence before the Court, a jury could reasonably conclude that [the plaintiff's] phone number was simultaneously a residential and business number, or the number for a home-based business. Whether [the plaintiff's] phone number was a business number at the time [the plaintiff] received these calls is a disputed issue of material fact." *Id.* at *3.

In *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, 2:13-cv-01289, 2014 WL 4057166 (W.D. Wash. 2014), the District Court denied summary judgment because it found that the plaintiff

---

was a "residential telephone subscriber" under the TCPA because although the plaintiff used his personal cell phone number to sell sheep from his farm, the plaintiff provided sufficient evidence that he used his cell phone number for personal purposes and the defendant failed to conclusively establish that the cell phone number was a "business number."

In *Lee v. Loandepot.com, LLC,* No. 14-CV-01084-EFM, 2016 WL 4382786 (D. Kan. Aug. 17, 2016), the District Court granted summary judgment because the plaintiff failed to "offer ***any*** evidence" that the number registered on the national DNC was used for residential/personal purposes. *Id.* at *6. Here, in contrast, Plaintiff provided substantial evidence to raise a genuine dispute of material fact that Plaintiff's cell phone number was used for residential/personal purposes and was not a "business number" under the appropriate summary judgment standard. As such, *Lee* is inapplicable here and the Findings and Recommendations' reliance on it is misplaced.

The Findings and Recommendations also incorrectly disregard Plaintiff's declaration as "self-serving" citing *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997). Plaintiff's declaration, while admittedly filed in support of his Opposition to Defendant's summary judgment motion, is not conclusory or lacking in details as the affidavit analyzed in *F.T.C.* where the Ninth Circuit noted that the affidavit in question did not contain any of the "facts" asserted in the appellate brief. Here, Plaintiff's declarations filed in support of his Opposition and these Objections contain sufficient detail, about facts, not conclusions, which are undisputed, sufficient to establish that a genuine dispute of material fact exists. It is Defendant's burden, not Plaintiff's, as the moving party to conclusively establish that no genuine dispute of material facts exists.

Here, Plaintiff has provided sufficient evidence to raise a genuine dispute of material fact as to whether Plaintiff's cell phone number was residential/personal or business. In reviewing the facts under the appropriate standard, in the light most favorable to Plaintiff as the non-moving party and

with all credible inferences in his favor, summary judgment cannot be granted as Defendant has not conclusively established that Plaintiff's cell phone number was a business number. Based on the evidence provided by the parties, a genuine dispute of material fact exists which can only be resolved by the trier of fact.

     **B.**    **DEFENDANT'S "SAFE HARBOR" DEFENSE**

     The Findings and Recommendations do not analyze Defendant's safe harbor defense because they conclude that Plaintiff's cell phone number was a "business number." Without an analysis, Plaintiff objects to the conclusion that Plaintiff's cell phone number was a "business number" and for the reasons and arguments stated in his Opposition to Defendant's summary judgment, disputes that Defendant can avail itself of the safe harbor defense pursuant to 47 C.F.R. § 64.1200(c)(2)(i). Plaintiff reserves his right to object and address this argument given the Findings and Recommendations' silence as to this argument.

**V.**    **CONCLUSION**

     For the foregoing reasons, Plaintiff respectfully objects to the Magistrate Judge's Findings and Recommendations [Dkt. 63]. Defendant's Motion for Summary Judgment [Dkt. 46] should be denied in its entirety.

Dated:  December 9, 2019          Respectfully Submitted,

                    By:/s Gregory K. Zeuthen
                    **Gregory K. Zeuthen** – gkz@zlawoffice.com
                    Oregon Bar No. 843961
                    **GREGORY K. ZEUTHEN, ATTORNEY AT LAW, P.C.**
                    210 SW Morrison Street, Suite 400
                    Portland, Oregon 97204
                    Phone: (503) 227-7257
                    Fax: (503) 228-1556

By: /s S. Amanda Marshall
**S. Amanda Marshall** – amanda@maclaw.law
Oregon Bar No. 953473
**S. AMANDA MARSHALL, LLC**
4545 SW Angel Avenue
Beaverton, Oregon 97005
Phone: (503) 472-7190

By: /s Jarrett L. Ellzey
**Jarrett L. Ellzey** – jarrett@hughesellzey.com
Texas Bar No. 24040864 (*Pro Hac Vice*)
W. Craft Hughes –craft@hughesellzey.com
Texas Bar No. 24046123 (Pro Hac Vice)
**HUGHES ELLZEY, LLP**
2700 Post Oak Boulevard, Suite
1120 Galleria Tower I
Houston, Texas 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

By: /s John P. Kristensen
**John P. Kristensen** – john@kristensenlaw.com
Cal. Bar No. 224132 (*Pro Hac Vice*)
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, CA 90066
Phone: (310) 507-7924
Fax: (310) 507-7906

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**

## **CERTIFICATE OF SERVICE**

I certify that on this 9th day of December 2019, the foregoing document entitled PLAINTIFF ERIK MATTSON'S OBJECTIONS TO FINDINGS AND RECOMMENDATIONS and accompanying document(s) were served in accordance with the Court's CM/ECF system, which will send notification of such filing and a true copy of the foregoing document by notice via email to the ECF participants of record.

*/s/ John P. Kristensen*
John P. Kristensen