IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIK MATTSON,                                          No. 3:18-cv-00990-YY

           Plaintiff,                          ORDER

    v.

NEW PENN FINANCIAL, LLC,

           Defendant.

HERNÁNDEZ, District Judge:

    Magistrate Judge You issued a Findings and Recommendation on November 7, 2019, in which she recommends that this Court grant Defendant's motion for summary judgment. The matter is now before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

    Plaintiff filed timely objections to the Magistrate Judge's Findings & Recommendation. Pl. Obj., ECF 74. When a party objects to any portion of the Magistrate Judge's Findings & Recommendation, the district court must make a *de novo* determination of that portion of the

1 – ORDER

Magistrate Judge's report. 28 U.S.C. § 636(b)(1); *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

After carefully considering Plaintiff's objections, Defendant's response, and the relevant portions of the record, the Court declines to adopt the Magistrate Judge's Findings & Recommendation.

### A. Business Number

Plaintiff brings claims under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). The regulations promulgated under the TCPA provide that "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number" on the Do Not Call Registry ("DNCR"). 47 C.F.R. § 64.1200(c)(2). The TCPA does not apply to business telephone numbers. *In Re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 9779, 9785 (June 17, 2008) ("[T]he National Do Not Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."). As the Magistrate Judge pointed out, there is "there is little guidance on the applicability of the TCPA to phones used for both business and personal purposes[.]" F&R 7, ECF 63. The Findings and Recommendation concluded that no genuine issue of material fact remains that Plaintiff's cell phone number was a business number that is not subject to the protections of the TCPA. The Court disagrees.

Plaintiff purchased a cell phone and personal cellular service in or about 2007. Kristensen Decl. Ex. 7 ("Mattson Decl.") ¶ 8–9, ECF 56-7. He has used the cell phone number primarily for personal use since that time. Mattson Decl. ¶ 13. At some point, a business in which Plaintiff is a one-third owner, Westland Investors, began to pay the bill for Plaintiff's cell phone service. *Id*. At the time of the relevant phone calls, the subject number was part of a Westland Investors

Verizon cell phone plan that included the cell phone numbers of the other partners of Westland Investors and cell phones of Westland Investors's employees. *Id*. Plaintiff, his partners, and his employees used the cell phones on the Westland Investors Verizon plan for personal purposes, and they were not listed on Westland Investors's website as business phone lines. *Id*. ¶¶ 13, 15. Westland Investors had a separate business telephone number that is listed on its website which is answered by a Westland Investors employee and used for business purposes. *Id*. ¶ 15.

Plaintiff listed the subject number on a zoning application that he filed in relation to Westland Investors's business in a blank space next to the word "Mobile," but also listed Westland Investors's business land line next to "Phone" on that application. Suden Decl. Ex. 8, ECF 50-4. There is no other evidence in the record that Plaintiff held the subject number out to the public as a business phone number. The F&R also concluded that because Westland Investors "apparently deducted the [Verizon] bills as a business expense," that fact supports the conclusion that Plaintiff's cell phone number was a business line. F&R 10. Because there is no evidence in the record beyond Plaintiff's testimony that he believed, but was not sure, that Westland Investors deducted the expense of the Verizon bill as a business expense on its income tax return, the Court cannot rely on that testimony to establish an undisputed fact that the Verizon bill was deducted as a business expense. Additionally, the F&R's conclusion that the fact that Plaintiff's call history was printed in a cell phone bill that included Westland Investors employees and which Verizon sent to the business reflects an expectation of privacy that is "not commensurate with a residential line" appears to be an inference drawn in favor of the moving party. *See* F&R 7.

Viewing the facts in the light most favorable to the nonmoving party, as the Court must, the Court finds that a genuine issue of material fact remains concerning whether the subject

3 – ORDER

number was a residential or business phone number. *Clauss v. Legend Sec., Inc.*, No. 4:13-cv-00381-JAJ, 2014 WL 10007080, at *3 (S.D. Iowa Sept. 8, 2017) (denying summary judgment where there was evidence both that the phone number was a business number and a residential number). Although Mattson's use of a phone line for personal calls does not automatically transform it into a residential line for purposes of the TCPA, neither does his use of a personal line for business calls automatically transform it into a business line. *See Southwell v. Mortg. Investors Corp. of Ohio, Inc.*, No. 2:13-cv-01289, 2014 WL 4057166, at *3 (W.D. Wash. Aug. 14, 2014) (holding that the plaintiff's cell phone was a residential line for purposes of the TCPA despite his use of the phone to occasionally sell sheep to his friends). On the facts in the record, a reasonable jury could conclude that the subject number is a residential line that is subject to the TCPA's protections.

### B. Safe Harbor Provision

A telemarketer may call a phone number listed on the DNCR with the subscriber's express invitation or permission or when the telemarketer has a personal relationship with the recipient of the call. 47 C.F.R. § 64.1200(c)(2)(ii)–(iii). The TCPA's implementing regulations include a "safe harbor" provision that exempts a defendant from liability for calls to a phone number listed on the DNCR if the defendant can (1) demonstrate that the call to the number listed on the DNCR was in error, and (2) establish that it had implemented adequate procedures to avoid calling numbers listed on the DNCR. 47 C.F.R. § 64.1200(c)(2)(i). The procedures that a telemarketer must have in place to avoid liability under the safe harbor provision are listed in 47 C.F.R. § 64.1200(c)(2)(i)(A)–(E). Defendant argued that it is entitled to summary judgment on Plaintiff's claims because it met both safe harbor requirements.

The Magistrate Judge declined to decide whether Defendant is entitled to summary judgment on its safe harbor defense because she decided that the TCPA did not apply based on her conclusion that Plaintiff's phone number was a business number. F&R 11. Because a question of fact remains as to whether the subject number was a residential number, the Court must now resolve the question of whether Defendant is entitled to summary judgment under the safe harbor defense.

Defendant argues that because it "ma[de] a good faith attempt to avoid placing calls to phone numbers on the []DNCR," it is entitled to summary judgment. Def. Mot. Summ. J. ("Def. Mot.") 15, ECF 46. Defendant failed, however, to establish that the calls it made to Plaintiff were with Plaintiff's express consent or were made in error.

1. Error

Having adequate procedures in place, in the absence of any error, is insufficient to avoid liability under the safe harbor provision. 47 C.F.R. § 64.1200(c)(2)(i); *In re Dynasty Mortg., L.L.C.*, 20 F.C.C. Rcd. 4921, 4929–30 (2005). Defendant can show that the calls it made to Plaintiff were in error by showing that the calls were made unintentionally. *Simmons v. Charter Comm'ns, Inc.*, 222 F. Supp. 3d 121, 135 (D. Conn. 2016). One way that Defendant can show that it called Plaintiff unintentionally is by establishing the "procedural breakdowns that led to such calls, as well as the steps that the seller has taken to minimize future errors." *Id.* (citing *In re Dynasty Mortg., L.L.C.*, 20 F.C.C. Rcd. at 4929–30).

In its summary judgment motion, Defendant argued that it inadvertently called Plaintiff because it believed that it had Plaintiff's prior express consent to call. Defendant called Plaintiff after it received information from a third-party lead-generating vendor, QuinStreet, with Plaintiff's contact information. Def. Mot. 21. Defendant asserts that both it and QuinStreet

5 – ORDER

believed that all leads that QuinStreet provided to Defendant were from customers who had given prior express permission or invitation to be called. *Id*. Defendant made six calls and sent three text messages to Plaintiff's cell phone between September 2017 and October 2017. Daluz Decl. ¶ 16.

Defendant's representative testified that QuinStreet was the source of the lead. Kristensen Decl. Ex. 2 ("Flanagan Dep.") 19:10–20, ECF 58-2. QuinStreet obtained the customer lead from SaveBig Leads, which administers the website www.MinuteMortgageQuotes.com. Yader Decl. ¶¶ 8–9, ECF 49. QuinStreet provided a lead to Defendant on September 1, 2017, in the name of Jessica Mattson, Plaintiff's wife, that included Plaintiff's cell phone number. *Id*. QuinStreet's contract with Defendant, under which QuinStreet agreed to provide Defendant with customer leads, provided that "QuinStreet makes no representation or warranty concerning the adequacy, completeness or accuracy of any information provided to Client by QuinStreet or by any consumer." Kristensen Decl. Ex. 1 at ¶ B.3, ECF 58-1; Daluz Decl. ¶ 14, ECF 48; Daluz Decl. Ex. C, ECF 48-3. Defendant relies on QuinStreet to provide it with TCPA-compliant leads and a record of the consumer's consent to receive calls. Daluz Decl. ¶ 15. Defendant uses another third-party vendor to access the DNCR and "scrub" phone numbers on its call lists against the DNCR to ensure TCPA compliance. *Id*. ¶¶ 18–19.

Defendant "assume[d]" that the information provided by its third-party lead generator was accurate and provided with the customer's consent, based on the consent verification that QuinStreet provided Defendant. Kristensen Decl. Ex. 6 ("Daluz Dep.") 24:15–25:13, 47:2–10, ECF 58-3. The consent verification listed on MinuteMortgageQuotes.com during the relevant time period provided that the customer consented to receive calls from "up to 4 lenders," even if the phone number that the customer provided was listed on the DNCR. Flanagan Decl. ¶ 6;

6 – ORDER

Flanagan Decl. Ex. A; Yader Decl. ¶ 10. However, there is no evidence in the record that New Penn was one of the "4 lenders" on the list that appeared in the pop-up window when a customer clicked on the hyperlinked "up to 4 lenders" text. Ms. Flanagan testified that she did not know if Defendant was on the list that appeared in the pop-up window after a customer clicked "up to 4 lenders" at the time that QuinStreet provided the lead to Defendant on September 1, 2017, and Defendant did nothing to determine whether it was included on that list. Flanagan Dep. 63:5–12; Yader Decl. ¶¶ 10–11, Flanagan Decl. Exs. A, B, ECF 15-1, 15-2.

Plaintiff presented evidence in the form of screen shots taken from a website called the Way Back Machine, which archives historical versions of websites over time. The Way Back Machine archived www.MinuteMortgageQuotes.com several times including, as relevant here, on October 18, 2016 and October 28, 2017. Kristensen Decl. Ex. 14 at 18–21, ECF 56-14. The list that appeared when a person clicked the hyperlinked phrase "4 lenders" on October 18, 2016, or "5 lenders," as appeared in the disclaimer on October 28, 2017, did not include New Penn Financial. *Id.* The list did include SaveBig Leads, but Defendant contacted Plaintiff, not SaveBig Leads. There is no evidence in the record that Defendant had express consent from Plaintiff or Jessica Mattson when it called Plaintiff.

A question of remains concerning whether Defendant called Plaintiff in error because "it had a good faith belief that it had permission" to call the number. Defendant's alleged good faith belief was based on its assumption that it had consent, obtained by QuinStreet through MinuteMortgageQuotes.com, to call the customers that QuinStreet referred. But Defendant did not verify that customers had specifically consented to receive calls from Defendant by ensuring that New Penn was included on the list that appeared when a customer clicked "up to 4 lenders." Because Defendant assumed, without verifying, that QuinStreet only provided Defendant with

phone numbers of customers who had consented to receive calls from it, Defendant believed that it did not need to check the DNCR to determine whether the phone number it had received from QuinStreet was on the DNCR. Daluz Dep. 56:25–57:4. A reasonable juror could conclude that because Defendant did not attempt to verify that the consumer had consented to receive its calls, and because Defendant's contract with QuinStreet did not require QuinStreet to provide "accurate" or "complete" leads, Defendant did not have a "good faith belief" that it had permission to call anyone whose lead QuinStreet provided from www.MinuteMortgageQuotes.com, including Plaintiff. Thus, a question of fact remains concerning whether the calls and text to Plaintiff were made in error.

Defendant argued that even if New Penn was not listed as one of the four lenders that the customer consented to receive calls from on www.MinuteMortgageQuotes.com, the consent disclaimer extended beyond that list to "other business partners." Def. Reply 21, ECF 61. Defendant did not develop that argument, and the regulations promulgated under the TCPA require the consumer's prior express consent to receive calls from the specific telemarketer that makes the call before the telemarketer can call a number listed on the DNCR. 47 C.F.R. § 64.1200(c)(2)(ii) ("Such permission must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed[.]"). Thus, consent to receive calls from "other business partners" is insufficient.

A jury could infer from the facts that Defendant knew or should have known that it did not have Plaintiff's consent and that Defendant intentionally called Plaintiff when Defendant knew that Plaintiff's number was listed on the DNCR. Consequently, a question of fact remains as to whether Defendant made an error when it called Plaintiff's phone number.

8 – ORDER

2. Compliance with section 64.1200(c)(2)(i)(D)

To qualify for the safe harbor defense, after establishing that its calls and text messages to Plaintiff were made in error, Defendant must demonstrate that it met the following additional requirements: (A) establishing and implementing written procedures to comply with the national do-not-call rules; (B) training its personnel in the procedures it established pursuant to the national do-not-call rules; (C) maintaining a list of telephone numbers that it may not contact; (D) using the national do-not-call database and a procedure to ensure it does not call a number on any list generated to comply with the do-not-call rules; and (E) purchasing and "employ[ing]" the national do-not-call database and not sharing the database or the cost to access the database with any other telemarketer. 47 C.F.R. § 64.1200(c)(2)(i). Because Defendant has not established that it is entitled to judgment as a matter of law that its calls were made in error by unintentionally calling Plaintiff, it has not established that the safe harbor defense applies, and the Court need not determine whether Defendant's policies and procedures to avoid placing calls to numbers on the DNCR were adequate. 47 C.F.R. § 64.1200(c)(2)(i).

## CONCLUSION

The Court DECLINES TO ADOPT Magistrate Judge You's Findings and Recommendation [63]. Defendant's Motion for Summary Judgment [46] is DENIED.

IT IS SO ORDERED.


DATED:   October 25, 2020   .


*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge


9 – ORDER